## IN THE MATTER OF HUGH S. PEOPLES.

*Habeas corpus pending examination on criminal charge.*

Where there is good reason to believe that a murder has been committed and a person is detained on reasonable grounds of suspicion to await examination before a police magistrate upon the charge of having been concerned therein, a higher court will not interfere, pending the examination, to release him on *habeas corpus.*

The preliminary examination of a person charged with a crime, especially if a non-bailable offence, must be made promptly and should not be put off to await the mere convenience of the magistrate or prosecuting officer.

HABEAS CORPUS. The preliminary application for the writ was submitted January 19th, and the following writ was issued:

### THE WRIT.

In the name of the People of the State of Michigan.

{ Seal of the Supreme Court }
{ of Michigan. }

To John Miner, Esq., Police Justice of the City of Detroit:

We command you that you certify fully and at large to our Justices of our Supreme Court at the Supreme Court room in the capitol at the city of Lansing, on Tuesday, January 24th, A. D. 1882, at 9 o'clock of the forenoon of that day, the day and cause of the imprisonment of Hugh S. Peoples, detained by your order as is said, by whatsoever name the said Hugh S. Peoples shall be called or charged, and have you then there this writ.

Witness the Honorable BENJAMIN F. GRAVES, Chief Justice of the Supreme Court of the State of Michigan, and the seal of said Supreme Court, this 19th day of January, A. D. 1882.          CHAS. C. HOPKINS,
                                        Clerk Supreme Court.

I hereby certify that this writ is duly allowed in open court this 19th day of January, A. D. 1882, at the Supreme Court room in the capitol in the city of Lansing.

BENJAMIN F. GRAVES,
Chief Justice.

Upon the return day the petitioner was brought before the Supreme Court and return was made to the foregoing writ.

### THE RETURN.

State of Michigan, Police Court of Detroit.

The Honorable the Supreme Court of the State of Michigan:

The undersigned John Miner, Police Justice of the city of Detroit, in obedience to the writ of certiorari issued out of said Supreme Court on the 19th day of January, A. D. 1882, commanding me to certify fully and at large to the said Supreme Court the day and cause of the imprisonment of one Hugh S. Peoples, detained by the order of the under-

signed, which said writ is returned herewith, returns unto said court:

1st. That the said Hugh S. Peoples is detained in the custody of the sheriff of the county of Wayne to await examination on the charge of murder, which examination is set to come off before the undersigned police justice on the 15th day of February next at 10 o'clock in the forenoon, to which time said examination was adjourned.

2d. That the detention of said Hugh. S. Peoples by the said sheriff at the county jail of the county of Wayne is by the verbal order of the undersigned so committing him to await examination on the charge aforesaid at the said adjourned day, which order was made on the 16th day of January, A. D. 1882, pursuant to the statute in such case made and provided.

3d. That the copy of the warrant annexed to the petition for said writ of certiorari is, the undersigned admits, substantially a true copy of a warrant issued by him and duly returned on the day it bears date, to wit, January 16, 1882.

4th. That said warrant was issued as aforesaid by virtue of the complaint and examination in writing and on oath of one John Whitla, taken and made before the undersigned on the 27th day of July, A. D. 1881, a copy of which complaint and examination is hereto annexed, and the examination on oath of divers persons made in pursuance thereof. That such examinations were taken and made before the undersigned and by him reduced to writing and now in his custody, from time to time in the interval between said 27th day of July, A. D. 1881, the date of said complaint, and said January 16, the date of said warrant.

5th. That from said complaint and examinations it satisfactorily appeared to the undersigned that an offense not cognizable by a justice of the peace had been committed, to wit: that one Martha Whitla, on or about the 11th day of January, A. D. 1879, had been killed and murdered and her body thrown into the Detroit river; that said Hugh S. Peoples had stood towards the said Martha Whitla in intimate relations; that said examinations tended to show that said Martha Whitla claimed to have some money demand upon said Hugh S. Peoples growing out of a note of hand which said note the said examinations tended to show was in the possession of said Martha Whitla on said 11th day of January, A. D. 1879, the last day on which said Martha Whitla was seen alive; that said examinations, also, tended to show that said Hugh S. Peoples was seen in the com-

pany of the said Martha Whitla on Michigan avenue in the city of Detroit on the evening of said 11th day of January, A. D. 1879. The examinations aforesaid tended to show that the note aforesaid was not found upon the body of said Martha Whitla when it was found afloat in the Detroit river on the 12th day of March, A. D. 1879.

6th. The undersigned further states that as a matter of common information he was aware of the fact that at the times the examinations aforesaid were being taken and made and before said warrant was issued, a suit for libel was pending in the Superior Court of Detroit wherein the said Hugh S. Peoples, as plaintiff, claimed damages from the Evening News Association, defendant, for having falsely and maliciously charged him, the said Hugh S. Peoples, with complicity in the murder of the said Martha Whitla, and that the said defendant newspaper publishers had in said cause justified the publication aforesaid as true in substance, and the issue so made was to come up for trial before a jury in the said Superior Court; that afterwards, to wit, on or about the 13th day of January, A. D. 1882, the said issue so as aforesaid pending in the said Superior Court was submitted to a jury who found, as the undersigned was informed and believes, for the defendant newspaper publishers.

7th. The undersigned further states that he is informed and believes that the said Hugh S. Peoples, on the said 13th day of January after the verdict in the said cause as aforesaid, was arrested—by what authority he knows not—and that from that time until the 16th day of January, A. D. 1882, was kept, as he is informed and believes, in custody of the Metropolitan Police of Detroit at one of the station houses of said police in said city of Detroit. On which last mentioned day, at the special instance and request of the Honorable James Caplis, Prosecuting Attorney of the county of Wayne, and after full consultation and discussion of the facts with him, the undersigned for himself believing then and there that just cause to suspect said Hugh S. Peoples of the murder of said Martha Whitla existed, and that as a matter of public justice a full and public examination into all of the facts and circumstances of said murder ought to be made, did issue his warrant against the said Hugh S. Peoples in the form in which it appears before their court in the petition for said writ of certiorari. Upon which said warrant he, the said Hugh S. Peoples, was brought before the undersigned on the said 16th day of January, A. D. 1882.

8th. That the said Hugh S. Peoples being so before the undersigned, and his counsel likewise being present, did

demand an examination into the charge made in said warrant of arrest, immediately or at an early day. ' The undersigned was willing to accord this request, but the Prosecuting Attorney, being likewise present, did declare and say that he could not attend to the case within a space of 30 days and that any shorter period of adjournment would be inconsistent with public justice; that acting upon this statement the undersigned did continue said examination until the 15th day of February, A. D. 1882, at 10 o'clock in the forenoon, and the offense so charged against the said Hugh S. Peoples not being by law bailable before the undersigned, the said Hugh S. Peoples was by the verbal order of the undersigned, as aforesaid, committed to the custody of the sheriff of the county of Wayne, at the county jail of said county, without bail, to await the adjourned day aforesaid of the said examination. Dated January 23, 1882, Detroit, Mich.

JOHN MINER, Police Justice.

COPY OF COMPLAINT.

In the Police Court of the city ot Detroit.
To the Hon. John Miner, Police Justice.

State of Michigan, ⎱ ss.
County of Wayne. ⎰

John Whitla, being duly sworn, says that as he is informed and believes (a) criminal offense not cognizable by a justice of the peace or the justice of the said police court, has been committed within the said city of Detroit, to-wit: That on or about January 11th, 1879, one Martha Whitla was killed and murdered and her body thrown in the Detroit River at the foot of Twenty-fourth street in said Detroit. Affiant applies for an examination of such witnesses as he shall produce having knowledge of the commission of such crime.

JOHN WHITLA.

Subscribed and sworn to ⎱
before me this 27th day ⎰
of July, A. D. 1881. ⎰
JOHN MINER, Police Justice.

COPY OF EXAMINATION OF JOHN WHITLA.

In the Police Court, City of Detroit, County of Wayne, Mich.

John Whitla having this day made and filed with me, the undersigned John Miner, police justice of the city of Detroit, a complaint in writing, and he, the said John Whitla, being further interrogated regarding the murder in said complaint alleged, upon his oath does depose and say:

I reside in East Nankin; knew Martha Whitla in her life-time; she was my adopted daughter and lived with me continuously from age of 3 years to age of 15 years; she was about 28 years old in January 1879. At the age of about fifteen years she went to live with William Peoples in Nankin and other persons for near five years, when she came to Detroit to live with Hugh S. Peoples, and lived with him a number of years as his house-keeper. The last time I saw Martha Whitla was in September, 1878, at which time she was at my house. During the preceding winter she was at my house and was making a cloak or sacque of black goods. Next day after April election, 1880, I came to the city of Detroit with my wife and was shown by Andrew J. Rogers and Ham-

mond some clothing which they claimed was taken from the body of a woman found in Detroit river. I recognized among the clothing so shown us the sacque or cloak which Martha Whitla was making at my house. My wife recognized a thimble shown us which was formerly owned by Martha. I also recognized among the clothing shown me by Hammond and Rogers a dress or frock that I had seen Martha wear.

JOHN WHITLA.

Subscribed and sworn to
before me the 27th day
of July, 1881.
JOHN MINER.

*George H. Penniman, C. I. Walker* and *Edwin F. Conely* for petitioner.

*James Caplis*, prosecuting attorney for Wayne county, and Attorney General *Jacob J. Van Riper* against.

GRAVES, C. J. We have given, as it was our duty, as much consideration to this case as the time allowed us has permitted, and it remains to explain with brevity the result reached.

It seems that the police authorities at Detroit were led to believe that a murder had been committed in the city and that grounds existed for inquiring whether the petitioner ought not to be held for trial as a party to the crime.

Under these circumstances he was proceeded against for the purpose of such preliminary examination, and we are of opinion that the authority of the police justice attached and has not been lost. The investigation was set on foot and while still pending the application by *habeas corpus* came before the court, to the end that the examination may be at once terminated and further inquiry prevented. The investigation before the police justice was not set on foot to try the petitioner. It is a simple inquiry to find out according to due course of law whether the supposed crime has been committed, and if so whether there are facts to warrant putting him on trial for it—in other words whether such facts exist as would justify going beyond this simple investigation.

It is a matter of extreme delicacy for a superior court to intervene by *habeas corpus* for the purpose of stopping such an inquiry. The substantial position taken by the petitioner is: 1st, that there are not facts enough to show

that any crime has been committed; and 2d, that there are not circumstances enough, if there are any, to touch the petitioner.

Suppose this to be so, is it proper for this Court to interpose its power and stop the investigation instituted for the very purpose of finding out whether the crime suspected has been committed, and if so whether there is sufficient ground for holding the petitioner to answer before a jury? It seems to the Court not. To deny inquiry is to hinder the discovery of such facts as lawful inquiry is alone competent to reveal, and it is not correct—not a fit exercise of jurisdiction—to interpose merely because in the progress of the inquiry, and before it is finished, the purpose is yet unaccomplished, and it is not yet ascertained that any crime has been committed or that there is any ground for holding the petitioner.

Now if a great crime has been committed, or the community believes that one has been committed, it is natural and reasonable that the public should be stirred and be active and earnest in the effort to find out the truth, and in searching out the criminal if criminality appear. It would be a reflection upon the morals and civilization of a community, if it should be found under such circumstances cold, callous and indifferent. Such an occasion, however, is just that when the imperial majesty of the law should have entire sway, and fully assert itself; not simply to vindicate public justice, but also to guard and protect the rights of the accused. At such a time the Constitution throws its protection around him, and at such a time the benevolent principles of the common law raise presumptions in his favor. Indeed these things belong to the very genius of our system.

In the present case we have not discovered any fair or reasonable ground for denying bail. If any facts exist which bear against it they have not been disclosed, and nothing has been produced on this inquiry implying any necessity for the delay which is occurring in carrying on the examination. We cannot help thinking that if circumstances

existed which favored such delay it would have been proper to have conveyed the fact to the Court. On the whole, so far as the Court has been able to find out from the proceedings here, there is no reason for delay or for refusing to let the petitioner to bail as the examination progresses, and the propriety of allowing bail from time to time will depend upon the facts developed. A person accused of crime is not to be delayed in his examination for the mere convenience or personal accommodation of the officers of the law. His rights are to be considered and respected. He is not presumed to be guilty because he is under arrest. The presumption is the other way.

The result of the hearing is that the petitioner must be remanded.

CAMPBELL, J. There is only one point on which I desire to say a word. I agree in the main with the views announced by the Chief Justice, but I think it is well settled at common law that when a verdict found in a civil case determines on a proper issue that such a felony has been committed there is such probable cause as deprives a party of a right to demand bail on an examination, and would be of considerable force in determining whether it should be allowed him at all.

COOLEY, J. The verdict in the civil case which the police justice returns, has no bearing in this case, for the very obvious reason that it might have been rendered, not only without any belief in the petitioner's guilt, but without even any present suspicion of his guilt. It was only necessary for the jury to find that defendant was excused in making the publication; and they might have reached that conclusion on their view of the privileges of the press, even though the evidence on the trial had in their opinion cleared up the grounds of suspicion on which the article complained of was published.

MARSTON, J. I am not prepared to say that the verdict could have been taken into consideration by the magistrate.

When a homicide has been committed every good citizen should assist in endeavoring to discover the perpetrator thereof; and when no person is able to make a positive complaint, it becomes the clear duty of the prosecuting attorney to make a written complaint on information and belief. This sets the magistrate in motion; he thereupon issues subpœnas, brings witnesses before him and examines them on oath, and if upon such examination it appears that a crime has been committed, and the evidence fairly tends to connect certain persons therewith, it is then his duty to issue his warrant for their arrest. This course has been substantially pursued in the present case, and without saying how far this court upon *habeas corpus* could go into an examination of such *ex parte* showing,—if in writing,—it is sufficient to say that the depositions have not been returned in this case,—only the tendency thereof,—and I should be reluctant indeed upon such a return to say the magistrate did not have probable cause for issuing his warrant.

Where the respondent is not admitted to bail, either because the offence is not bailable, or he is unable to procure bail, there should be no delay on the part of the prosecution in proceeding with the examination, except such as may be necessary to procure the attendance of witnesses. The Constitution gives him the right of a speedy trial, and this, in my opinion covers, also, the examination. This right is superior to any question of the mere convenience of public officers, and the investigation should commence at once unless the accused asks for delay. In this case I think the delay was unreasonable.

*Mr. Conely,* for the petitioner. I understand the court advises that the respondent be admitted to bail on proper application.

THE CHIEF JUSTICE. We see no reason, in anything which has appeared on this hearing, why he should not be admitted to bail.

MARSTON, J. If bail is given in a case of this kind it does not follow that it is to continue in force during the

entire investigation. The facts developed may show that the respondent should not be allowed to continue on bail.

THE CHIEF JUSTICE. Suppose the facts should tend to show guilt, it would present a very different question from any that has been presented here.

*It is ordered* that the writ be denied.